IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN ODI, | : | |
| *INDIVIDUALLY AND AS THE PERSONAL* | : | |
| *REPRESENTATIVE OF THE ESTATE OF* | : | |
| *LILY ODI, DECEASED* | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 15-4903 |
| GARY ALEXANDER, ET AL. | : | |

<u>**MEMORANDUM**</u>

**SURRICK, J.**                                                    **MARCH  7 , 2017**

Presently before the Court are:  (1) Defendants Gary Alexander and Beverly Mackereth's

Motion to Dismiss First Amended Complaint (ECF No. 5); (2) Defendant Linda Robson's

Motion to Dismiss First Amended Complaint (ECF No. 12); and (3) Defendant Jane Richards'

Motion to Dismiss First Amended Complaint (ECF No. 17).  For the following reasons,

Defendants' Motions will be granted in part, and denied in part, and Plaintiffs' request to amend

the Amended Complaint will be granted.

I.      **BACKGROUND**

In this civil rights action, Plaintiff John Odi, individually, and on behalf of his deceased

mother, Plaintiff Lily Odi, alleges that Ms. Odi was unlawfully denied Medicaid benefits due to

discrimination on account of race and national origin, which ultimately resulted in Ms. Odi's

death from an aggressive form of breast cancer.  Plaintiffs assert claims for substantive and

procedural due process and for equal protection under 42 U.S.C. §§ 1981, 1983, and 1988, 42

U.S.C. § 2000d (Title VI of the Civil Rights Act), and 42 U.S.C. § 1396a(a)(8) (Title XIX of the

Social Security Act), and the associated Medicaid Regulation, 42 C.F.R. § 435.930(b).

Defendants include Gary Alexander and Beverly Mackereth, both former Secretaries of the

Department of Public Welfare of the Commonwealth of Pennsylvania; Linda Robson, Executive Director of the Delaware County Assistance Office; and Jane Richards, the District Administrator for the Darby District of the Delaware County Assistance Office.[1]  All Defendants are sued in their official and individual capacities.

### A.    Factual Background[2]

The facts of this case are set forth in the First Amended Complaint and are as follows.  In May 2008, Ms. Odi lawfully emigrated from Nigeria to the United States to live in Pennsylvania with her son, John Odi.  (Am. Compl. ¶ 28, ECF No. 4.)  On April 9, 2010, Ms. Odi obtained the status of lawful permanent resident and was given a "green card."  (*Id.* ¶ 29.)  In May 2011, Ms. Odi was diagnosed with breast cancer and subsequently applied for emergency Medicaid through the Delaware County Assistance Office.  (*Id.* ¶¶ 32-33.)

Medicaid is a public medical insurance program jointly funded by the federal government and the states.  (*Id.* ¶¶ 21-27.)  In Pennsylvania, DHS is the state agency that administers Medicaid.  (*Id.* ¶¶ 24-25.)  An individual in Pennsylvania who wishes to receive Medicaid applies through the appropriate DHS County Assistance Office, which screens the application and determines whether the applicant is eligible for Medicaid.  (*Id.* ¶¶ 25-27.)  DHS and its employees, including all Defendants, were responsible for determining whether an individual like Ms. Odi is eligible for medical assistance.  (*Id.* ¶ 25.)

Ms. Odi's May 2011 application for Medicaid was approved and she received benefits from May 2011 until May 2012.  (*Id.* ¶ 34.)  On May 14, 2012, DHS closed Ms. Odi's case and

---

[1] The Pennsylvania Department of Public Welfare has since been renamed the Pennsylvania Department of Human Services ("DHS").  We will refer to the state agency as "DHS" throughout this Memorandum.

[2] For the purpose of this Motion, the factual allegations in the Amended Complaint are taken as true.  *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

stopped providing her with benefits.  (*Id.* ¶ 35.)  When DHS terminated Ms. Odi's benefits, they failed to provide her with renewal forms or with a redetermination notice.  (*Id.*)  In June 2012, Ms. Odi filed a new application for Medicaid benefits as she continued to require medical treatment for her breast cancer.  (*Id.* ¶ 36.)  In conjunction with this application, a letter was supplied to DHS from Plaintiff's doctor, Dr. Jenia Jeneb-Wolcott, which verified that Ms. Odi suffered from breast cancer.  The letter stressed the importance of Ms. Odi continuing to receive ongoing treatment for at least five years.  (*Id.* ¶ 45.)

On July 5, 2012, DHS denied Ms. Odi's June 2012 Medicaid application.  (*Id.* ¶ 37.) DHS stated in the denial that there was "no proof of income or letter forms" supplied with her application.  (*Id.*)  In fact, Ms. Odi provided these forms with her application.  (*Id.*)  On July 27, 2012, DHS notified Ms. Odi that more information regarding family income would be needed to make a determination about her June 2012 application for Medicaid benefits.  (*Id.* ¶ 38.)  On August 1, 2012, John Odi supplied DHS with the requested financial letter.  (*Id.* ¶ 39.)

On August 21, 2012, DHS again denied Ms. Odi's application for emergency Medicaid assistance.  (*Id.* ¶ 40.)  In its denial letter, DHS stated that Ms. Odi was not a "United States citizen or an alien lawfully admitted for permanent residence" and therefore did not qualify for benefits.  (*Id.*)  DHS's denial letter also cited as a basis for the denial 55 Pa. Code § 149.23, which pertains to the Aid to Families with Dependent Children program ("AFDC").  (*Id.* ¶ 73.) Code section 149.23 states that "[a] person who is not a citizen of the United States is not eligible for AFDC unless he is an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under provisions of law."  55 Pa. Code § 149.23.  Ms. Odi had been a lawful permanent resident at the time of the denial letter, and since 2010.  She

was therefore not subject to the ineligibility requirements contained in 55 Pa. Code § 149.23. (*Id.* ¶ 42.)

Defendant Richards and her subordinates failed to review the file or any of the documentation supplied by Ms. Odi.  (*Id*. ¶ 43.)  In response to DHS's denial letter, the Delaware County Assistance Office was again supplied with a copy of Ms. Odi's green card, her social security card, and a letter from her doctor stressing the need for continued care.  (*Id.* ¶ 44.) The doctor's letter had previously been provided to DHS in conjunction with the June 2012 application for benefits.  (*Id*. ¶ 45.)  All of this information was ignored.  (*Id*. ¶ 44.)  Richards allegedly decided that Ms. Odi's breast cancer did not constitute an emergency.  (*Id.* ¶ 41.)

On September 20, 2012, Ms. Odi appealed the denial of her Medicaid benefits.  (*Id.* ¶ 56.) Despite numerous requests to discuss the appeal informally, Plaintiffs were not given the opportunity.  (*Id.* ¶ 46.)  Specifically, in October 2012, Mr. Odi repeatedly requested an opportunity to discuss the appeal, both by telephone and in writing.  (*Id*.)  Mr. Odi was never afforded a telephone call.  (*Id*. ¶ 47.)  Finally, in March 2013, Mr. Odi's demands were granted and DHS agreed to provide Ms. Odi a hearing by telephone.  (*Id*.)  The telephonic hearing on the denial of Ms. Odi's benefits took place on April 23, 2013.  (*Id*. ¶ 48.)  During the hearing, the Administrative Law Judge and representatives from DHS agreed that Ms. Odi should have had medical assistance.  (*Id*.)  Ms. Odi's benefits were reinstated retroactively to August 1, 2012. (*Id.* ¶ 59.)  Notwithstanding the reinstatement, Ms. Odi was never given a functioning "access card" or credential that functioned to pay for the medical services.  (*Id.* ¶ 60.)  Ms. Odi several times attempted to use the Access Card that DHS provided to her; however, the card did not work and was rejected by each and every medical provider to which it was presented.  (*Id*.)

On August 3, 2013, Ms. Odi was notified again that her benefits were terminated.  (*Id.* ¶ 62.)  She timely appealed the termination.  (*Id.* ¶ 63.)  Ms. Odi died from untreated breast cancer on December 13, 2013.  (*Id.* ¶ 64.)  Ms. Odi's appeal was nevertheless pursued, ending with a settlement between her representatives and DHS on May 27, 2015.  The settlement provided that the benefits were reinstated posthumously for the period covering August 18, 2013 to December 13, 2013.  (*Id.* ¶ 65.)

### B.    Procedural History

On August 31, 2015, Mr. Odi, on behalf of himself and the estate of his deceased mother, Ms. Odi, filed a Complaint in this Court against Defendants Alexander, Mackareth, Robson, and Richards.  (ECF No. 1.)  An Amended Complaint was filed on December 28, 2015.  The Amended Complaint contains four counts:  Count I asserts a claim under Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d; Count II asserts claims under 42 U.S.C. §§ 1983 and 1988; Count III asserts a claim under 42 U.S.C. § 1981; and Count IV asserts a claim under the Medicaid Statute and Regulations, specifically 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930(b).  All four counts are asserted against all Defendants, both in their individual and their official capacities.

On January 11, 2016, Defendants Alexander and Mackereth filed a Motion to Dismiss for Failure to State a Claim.  (ECF No. 5.)  Plaintiffs filed a Response to Defendants' Motion to Dismiss on February 1, 2016.  (ECF No. 7.)  On May 24, 2016, Defendants Richards and Robson filed a Motion to Dismiss for Failure to State a Claim.  (ECF No. 12.)  On November 7, 2016, Richards individually filed a Motion to Dismiss for Failure to State a Claim.  (ECF No. 17.)  On November 18, 2016, Plaintiffs filed a Response to Richards' Motion to Dismiss.  (ECF No. 18.)

On November 28, 2016, Richards filed a Reply to Plaintiffs' Response to her Motion to Dismiss. (ECF No. 19.)

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  A motion under Rule 12(b)(6), therefore, tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the Plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Iqbal*, 556 U.S. at 678.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id*. at 679.  This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part

analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id*. at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the Plaintiffs have a "'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III.  DISCUSSION

Plaintiffs assert due process and equal protection claims under Section 2000d of the Civil Rights Act (Count I), under Section 1983 of the Civil Rights Act (Count II), and under Section 1981 of the Civil Rights Act (Count III). Plaintiffs also assert claims under Section 1396a(a)(8) of the Medicaid Act, and Section 435.930(b) of the Medicaid Regulations (Count IV). Defendants seek dismissal of all claims asserted against them by Plaintiffs.[3] We address the counts in turn.

### A.    Section 1983 (Count II)[4]

Defendants argue that Plaintiffs' claims under Section 1983 are barred by the two-year statute of limitations. Defendants contend that even if the claims are timely, sovereign immunity under the Eleventh Amendment requires dismissal of the claims asserted against Defendants in

---

[3] Defendants' Motions and accompanying memoranda are nearly identical. They assert the same arguments in support of dismissal of Plaintiffs' claims. Similarly, Plaintiffs' Responses are nearly identical, and assert the same arguments opposing dismissal.

[4] Plaintiffs also seek attorney fees under 42 U.S.C. § 1988, which permits fee shifting to the prevailing party in a Section 1983 lawsuit.

their official capacities.  Finally, Defendants contend that Plaintiffs have failed to allege facts sufficient to state due process and equal protection claims under Section 1983.

### 1.     Statute of Limitations

The parties do not dispute that the claims are governed by a two-year statute of limitations.[5]  The original Complaint was filed on August 1, 2015.  Defendants argue that Plaintiffs' claims are untimely because the alleged civil rights violations occurred more than two years prior to August 1, 2015.  Plaintiffs respond that the claims did not accrue until December 13, 2013, the day that Ms. Odi died.  Plaintiffs further contend that even if the date of Ms. Odi's death is not the relevant accrual date, then the continuing violations doctrine and the equitable tolling doctrine apply, rendering their Section 1983 claims timely.

Determining when a claim accrues is governed by federal law.  *Wallace v. Kato*, 549 U.S. 384, 388 (2007).  "The general rule is that the statute of limitations begins to run as soon as a right to institute and maintain suit arises . . . ."  *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 231 (3d Cir. 2003) (citation omitted).  Defendants contend that Plaintiffs' cause of action accrued on May 31, 2012, the day that Ms. Odi's May 2011 application for Medicaid was denied.  If Defendants are correct, then the statute of limitations would have run on May 31, 2014, over a year prior to when Plaintiff filed this action.

Under the continuing violations doctrine, however, "a plaintiff can sue for actions that occurred outside the applicable limitations period if a defendant's conduct is part of a continuing practice and . . . the last act evidencing the continuing practice falls within the limitations period."  *Cibula v. Fox*, 570 F. App'x 129, 135 (3d Cir. 2014) (internal quotation marks

---

[5] Federal courts apply the state personal injury statute of limitations in Section 1983 actions.  *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir. 2010).  Pennsylvania's statute of limitations for personal injury actions is two years.  42 Pa. Cons. Stat. Ann. § 5524.

omitted). "To determine whether a practice was continual, we consider (1) whether the violations are part of the same subject matter and (2) whether the violations occurred frequently." *Id.* In addition, Plaintiffs must point to one affirmative act that occured within the limitations period. *Id.*

We are satisfied that the continuing violations doctrine applies here. After Ms. Odi's May 2011 application for Medicaid was denied, she submitted a renewed application for Medicaid in June 2012. On July 5, 2012, that application was also denied. Ms. Odi appealed this denial on September 20, 2012. Following her April 23, 2013 appeal hearing, her benefits were retroactively reinstated to August 1, 2012. After Ms. Odi realized that the access card she had been provided did not function properly, her medical benefits were once again terminated on August 3, 2013. In September 2013, Ms. Odi timely appealed this denial of benefits. Ms. Odi died in on December 13, 2013. These facts support a finding that the violations are part of the same subject matter—the improper denial of Ms. Odi's Medicaid benefits. In addition, the violations occurred frequently and consistently over a year-and-a-half time period. Finally, Ms. Odi's appeal in September 2013 occurred within the limitations period.[6] Plaintiffs' claims under Section 1983 are timely.[7]

---

[6] Because we conclude that the continuing violations doctrine applies rendering Plaintiffs' claims timely, we need not consider Plaintiffs' alternative argument—that the date of Ms. Odi's death on December 13, 2013, was the accrual date for the purpose of determining whether the statute of limitations tolled. We note, however, that the case relied upon by Plaintiffs in support of this argument, *Pastierik v. Duquesne Light Co.*, 526 A.2d 323, 326-27 (Pa. 1987), addresses the accrual date for state law statutory claims. This action involves federal civil rights claims, not state law claims. Federal law, not state law, governs the accrual date for federal claims. *Wallace*, 549 U.S. at 388.

[7] Defendants also contend that Plaintiffs fail to allege specific facts showing each of the Defendants' personal involvement in the constitutional violations. As we explain further below, Plaintiffs will be permitted to amend the Complaint to assert additional facts as to Defendants' personal involvement.

While we need not reach Plaintiffs' final argument—that Ms. Odi's claims, if deemed untimely, should be equitably tolled—we conclude that the doctrine would nevertheless apply here.  "A statute of limitations can be tolled when principles of equity would make its rigid application unfair."  *Urcinoli v. Cathel*, 546 F.3d 269, 272 (3d Cir. 2008) (citation and internal quotation marks omitted).  A claim may be equitably tolled if:  "(1) the defendant has actively misled the plaintiff; (2) if the plaintiff has in some extraordinary way been prevented from asserting his rights; or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum."  *Satterfield v. Johnson*, 434 F.3d 185, 195 (3d Cir. 2006) (internal quotation marks omitted).  With regard to the second circumstance—whether Plaintiffs have in some extraordinary way been prevented from asserting their rights—Plaintiffs must also demonstrate that they "diligently pursued [their] rights."  *Urcinoli*, 546 F.3d at 273.

The facts alleged in the Amended Complaint, accepted as true, support application of the equitable tolling doctrine.  Defendants repeatedly represented that an appeal remedy was available to Ms. Odi, and yet despite Ms. Odi promptly pursuing that remedy, she was denied the appeal for over eight months, until it was too late.  In addition, Ms. Odi was actively misled by being told various erroneous reasons for why she was being denied medical assistance, by being provided a nonfunctioning access card that prevented her from getting the assistance that she was told she was permitted to seek, and by being denied benefits due to mistakes that could have been minimized with nominal diligence by agency officials.  Ms. Odi's supplemental application for benefits was denied in July 2012 for "lack of proof of income and a lack of proof of residency," despite her unequivocally providing proof of both to DHS.  The facts also show the extraordinary measures taken on the part of DHS officials to prevent Ms. Odi from asserting her rights.  There is no dispute that Ms. Odi was in dire need of medical assistance, and in fact died

of breast cancer after having been denied that assistance.  Under these circumstances, it would be unjust and unfair to bar Plaintiffs' claims as untimely.

### 2. *Sovereign Immunity under the Eleventh Amendment*

Next, Defendants argue that Plaintiffs' Section 1983 claims asserted against them in their official capacities are barred by sovereign immunity.  The Eleventh Amendment precludes lawsuits in federal court against states and their agencies.  U.S. Const. amend. XI; *see Lavia v. Pa. Dep't of Corr*, 224 F.3d 190, 195 (3d Cir. 2000) ("Generally, states are immune from suit by private parties in the federal courts.").  This immunity extends to state officials sued in their official capacities.  *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010).

There are three exceptions to sovereign immunity:  (1) Congress may specifically abrogate a state's sovereign immunity; (2) a state may waive its immunity by consenting to suit; or (3) state officials may be sued in their official capacity for prospective injunctive relief under *Ex Parte Young*, 209 U.S. 123 (1908).  *Hollihan v. Pa. Dep't of Corr.*, 159 F. Supp. 3d 502, 510 (M.D. Pa. 2016).  None of those exceptions apply here.  "Congress did not abrogate the states' immunity through the enactment of 42 U.S.C. § 1983."  *Mikhaeil v. Santos*, 646 F. App'x 158, 162 (3d Cir. 2016) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)).  Pennsylvania has not waived its immunity to Section 1983 suits.  *See* 42 P.A. Cons. Stat. § 8521(b); *see also Lavia*, 224 F.3d at 195.  Finally, Plaintiffs do not seek prospective injunctive relief but rather money damages.

Accordingly, sovereign immunity applies to Plaintiffs' Section 1983 claims asserted against Defendants in their official capacities.  We will consider Plaintiff's Section 1983 claims as against Defendants in their individual capacities.

>3.     *Substantive Allegations Under Rule 12(b)(6)*

Finally, Defendants argue that Plaintiffs fail to allege facts sufficient to state Section

1983 claims for substantive and procedural due process and for equal protection.  Specifically,

Defendants contend that Plaintiffs do not allege facts showing that any Defendant had personal

involvement in the alleged constitutional violations.  Defendants also contend that Plaintiffs fail

to allege facts that support the elements of the equal protection and due process claims.

>i.     <u>Personal Involvement</u>

The four Defendants named in Plaintiffs' Amended Complaint are or were all supervisors

involved in the administration of Pennsylvania's Medicaid system.  Defendants Alexander and

Mackereth were Secretaries at DHS, formerly DPW, which is responsible for implementing

Pennsylvania's Medical Assistance Program.  Robson was the Executive Director of the

Delaware County Assistance Office, which screens applicants for medical assistance eligibility.

Richards was the District Administrator for the Delaware County Assistance Office.

Individual liability will be imposed under Section 1983 only if the state actor played an

affirmative part in the alleged misconduct.  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir.

2005) (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Liability "cannot be

predicated solely on the operation of respondeat superior."  *Id*.  In other words, defendants in

Section 1983 civil rights actions "must have personal involvement in the alleged wrongs . . .

shown through allegations of personal direction or of actual knowledge and acquiescence."

*Atkinson v. Taylor*, 316 F.3d 257, 270 (3d Cir. 2003) (citing *Rode*, 845 F.2d at 1207-08).

Defendants contend that Plaintiffs fail to allege facts showing that each Defendant played

a role in denying Ms. Odi's medical benefits, and that as a result, the Section 1983 claims must

be dismissed.  Plaintiffs fail to address this argument in their Responses to the Motions to

12

Dismiss.  A review of the Amended Complaint reveals that Plaintiffs include very few allegations concerning each Defendant's specific personal involvement.  Plaintiffs' allege that "the acts and omissions" of Defendants "jointly, and the acts and omissions of each of them severally" resulted in the deprivation of Ms. Odi's constitutional rights.  (Am. Compl. ¶ 4.)  Plaintiff further alleges that DHS and its employees and agents, "including all the defendants, and each of them, were responsible for determining whether an individual is eligible for Medical Assistance."  (*Id*. ¶ 25.)  With the exception of Defendant Richards, the only time Defendants are specifically named in the allegations is in the paragraphs listing their titles with DHS and the Delaware County Assistance Office.   As to Defendants Alexander, Mackereth, and Robson, these general allegations do not sufficiently allege personal involvement for purposes of Section 1983.  *See Evancho*, 423 F.3d at 353 (affirming dismissal of complaint that "merely hypothesizes that [the Attorney General] may have been somehow involved simply because of his position as head of the Office"); *see also Bush v. Dep't of Human Servs*., 614 F. App'x 616, 620 (3d Cir. 2015) (affirming dismissal of section 1983 claim against city officials because the only allegation of personal involvement was the "conclusory statement" that the officials "were all directly involved in violating his 14th Amendment rights"); *Cruz v. Phila. Prison Sys*., No. 12-1268, 2015 U.S. Dist. LEXIS 37412, at *4 (E.D. Pa. Mar. 24, 2015) ("Listing a defendant's job description without additional information is not sufficient to create an allegation of personal direction or actual knowledge and acquiescence.").

    With respect to Defendant Richards, Plaintiffs specifically allege that Richards made the decision that Ms. Odi's breast cancer did not constitute an "emergency."  (*Id*. ¶ 41.)  Plaintiffs also allege that Richards or her subordinates "failed to review the file or any of the documentation supplied by Ms. Odi in a wanton or reckless disregard to the medical tragedy

unfolding." (*Id*. ¶ 43.)  These allegations are sufficient to show the personal involvement of Richards as to Plaintiffs' Section 1983 claims asserted in Count II.

ii.   <u>Equal Protection</u>

Plaintiffs allege that Defendants' acts and omissions represented a denial of her rights under the Equal Protection Clause of the Fourteenth Amendment.  The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The clause serves to ensure that all similarly situated individuals are treated the same.  *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  To state an equal protection claim under Section 1983, a plaintiff must allege that: (1) she is a member of a protected class; and (2) that she received treatment different than that received by other similarly situated individuals.  *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992).  A plaintiff must plead facts showing that other similarly situated individuals received different treatment.  *Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005).

Defendants contend that Plaintiffs fail to state an equal protection claim because they have not alleged in the Amended Complaint that Ms. Odi received treatment different than other similarly situated people.  It is not disputed that Plaintiff is a member of a protected class based upon her race and national origin.  However, Plaintiffs have not alleged any facts about the treatment of similarly situated individuals.  This is fatal to Plaintiffs' equal protection claim.  *See Mendoza v. Meisel*, 270 F. App'x 105, 107-108 (3d Cir. 2008) (affirming dismissal of equal protection claim under Section 1983 where the plaintiff failed to allege that "he was treated differently from other people who are similarly situated"); *Hudson v. Coxon*, 149 F. App'x 118, 121 (3d Cir. 2005) (affirming dismissal of equal protection claims for failure to allege

14

differential treatment of others similarly situated).  Plaintiffs' equal protection claims will be dismissed, without prejudice.

### iii.   Procedural Due Process

Plaintiffs assert a due process claim under Section 1983.  The Fourteenth Amendment prevents the government from depriving an individual of liberty or property interests without due process of law.  U.S. Const. amend. XIV, § 1.  To assert a procedural due process violation, a plaintiff must demonstrate that:  (1) he or she was deprived of a liberty or property interest; and (2) the procedures afforded the plaintiff incident to that deprivation failed to comport with the requirements of due process.  *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). A protected property interest exists only if the plaintiff has a legitimate claim of entitlement to the interest.  *Id.* at 234.  "Due process requires that a deprivation of a property interest 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'"  *Gikas v. Washington Sch. Dist.*, 328 F.3d 731, 738 (3d Cir. 2003) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)); *see also Graham v. City of Phila.*, 402 F.3d 139, 145 (3d Cir. 2005) ("The Supreme Court consistently has held that some kind of hearing is required at some time before a person is finally deprived of his property interests." (citation and internal quotation marks omitted)).

Defendants do not dispute that Plaintiffs have met the first element of the claim— deprivation of a liberty or property interest.  Indeed, entitlement to Medicaid benefits is a protectable property interest for purposes of due process claims.  *See Cospito v. Heckler*, 742 F.2d 72, 81 (3d Cir. 1984); *see also Lewis v. Rendell*, 501 F. Supp. 2d 671, 692 (E.D. Pa. 2007) ("It is well established that Medicaid beneficiaries do, in fact, have a constitutionally protected

property interest in Medicaid benefits.") (citation and internal quotation marks omitted), *rev'd in part on other grounds*, *Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012).

Defendants argue that the due process claims should be dismissed because Pennsylvania provides adequate judicial remedies to dispute the alleged constitutional violations.  This argument goes to the second element of the due process claim.[8]  Defendants contend that Pennsylvania Regulations provide for administrative and judicial procedures so that individuals can pursue denials of medical benefits.  "A state provides constitutionally adequate procedural due process when it provides reasonable remedies to rectify a legal error by a local administrative body."  *Vamsidhar Reddy Vurimindi v. City of Phila.*, 521 F. App'x 62, 65 (3d Cir. 2013) (quoting *DeBlasio v. Zoning Bd. of Adjustment for Twp. of West Amwell*, 53 F.3d 592, 597 (3d Cir. 1995), *abrogated in part on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 400 (3d Cir. 2003)).

The DHS Regulations state that "every person applying for or receiving . . . medical assistance . . ." is afforded "the right to appeal from a Departmental action or failure to act and to have a hearing . . . ."  51 Pa. Code § 275.1(a)(2).  The Regulations further provide that hearings will be afforded for appeals from denials, suspensions, or discontinuances of rights.  *Id*. at § 275.1(a)(4).  Defendants do not dispute that Plaintiffs took advantage of these administrative remedies by appealing the denials of her requests for Medicaid.  However, this is not the end of the analysis.  The DHS Regulations also provide that upon receipt of a notice of appeal—which can be made orally or in writing—DHS or the County Assistance Office has certain responsibilities.  For example, DHS must offer the appellant—here, Ms. Odi—"the opportunity

---

[8] Defendants also argue that Plaintiffs have not alleged facts showing the personal involvement of any Defendant in the deprivations of Ms. Odi's rights.  We discussed Defendants' argument above, *see* supra Section III.A.3.i, and will permit Plaintiffs to amend their Amended Complaint to assert additional facts with regard to personal involvement.

for an agency conference to resolve, if possible, the appeal." 55 Pa. Code § 275.4(a)(3)(ii).
After an appeal is received, DHS or the County Assistance Office has sixty days to take "final
administrative action," which includes "a hearing and subsequent decision by the hearing officer,
optional review by the Secretary . . . and immediate implementation of the hearing decision by
the appropriate agency." *Id*. § 275.4(b). If final administrative action "has not been rendered"
within this sixty-day period, then the requested assistance must be authorized in the interim until
final administrative action is rendered. *Id*. § 275.4(d).

Based upon our review of the allegations in the Amended Complaint, it is clear that these
administrative procedures were not followed. Ms. Odi timely appealed the denial of her
Medicaid application on September 20, 2012; however, she was not provided a hearing until
April 23, 2013, over seven months after the appeal. During this time, Mr. Odi repeatedly
contacted the agencies to inquire about the appeal process, without any success. In accordance
with the regulations, administrative action had not been timely rendered on Ms. Odi's appeal, but
Ms. Odi was not provided the Medical assistance she requested during the interim period. Ms.
Odi ultimately passed away without the medical attention that she needed. We are satisfied that
the allegations adequately state due process violations. However, because Plaintiffs have not
properly alleged the personal involvement of Defendants Alexander, Mackereth, and Robson
with respect to the due process violations, we are compelled to grant Defendants' request to
dismiss the procedural due process claims against these Defendants, without prejudice.

iv. <u>Substantive Due Process</u>

Plaintiffs also state a claim for substantive due process under the Fourteenth Amendment.
To state a claim for a violation of substantive due process, Plaintiffs must allege: (1) that they
have "a protected property interest to which the Fourteenth Amendment's due process protection

17

applies" and (2) "that a governmental actor's behavior in depriving [them] of the interest in question was 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 427 (3d Cir. 2003) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).  The Third Circuit has made clear that the "property interest" protected by substantive due process claims is qualitatively different than the property interest protected by procedural due process.  *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000).  Substantive due process claims only protect property interests that are "fundamental" to the United States Constitution, and are "not determined by reference to state law."  *Id*. at 140; *see also Skrutski v. Marut*, 288 F. App'x 803, 808 (3d Cir. 2008) ("Only property interests that are fundamental under the federal Constitution are sufficient for purposes of substantive due process.").

Ms. Odi's property interest for purposes of her due process claims is her entitlement to Medicaid benefits.  These benefits are provided by state statute, and are administered through state agencies.  The property interest is therefore determined only "by reference to state law." *Nicholas*, 227 F.3d at 140.  Accordingly, Plaintiffs' substantive due process claims will be dismissed.

**B.      Title VI of the Civil Rights Act of 1964 – 42 U.S.C. § 2000d (Count I)**

Plaintiffs assert a claim under Title VI of the Civil Rights Act of 1964.  The statute states that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.

Defendants contend that Title VI is an improper vehicle to impose liability on individual defendants because they are not "programs or activities receiving Federal financial assistance." *Id.*  Plaintiffs fail to address this argument in their Responses to Defendants' Motions.

Generally, "[i]ndividual liability may not be asserted under Title VI." *Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011) (citing *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003)); *Shannon v. Lardizzone*, 334 F. App'x 506, 508 (3d Cir. 2009) ("Courts have held that, because Title VI forbids discrimination only by recipients of federal funding, individuals cannot be held liable under Title VI."); *Bethea v. Roizman*, No. 11-254, 2012 U.S. Dist. LEXIS 89093, at *44 (D.N.J. June 27, 2012) ("Individual liability may not be asserted under Title VI because an individual is not a 'program' receiving federal funds."); *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 928 (E.D. Pa. 2016).  Here, Plaintiffs have only sued the four administrators—Alexander, Mackereth, Robson, and Richards—not the entity, DHS.  Accordingly, Count I will be dismissed.

## C.    Section 1981 Liability (Count III)

Plaintiffs assert a claim under Section 1981, which prohibits discrimination on account of race.  The statute provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to . . . the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .  42 U.S.C. § 1981(a).

The Third Circuit has held that the Section 1981 "does not itself provide a remedy against state actors."  *McGovern v. City of Phila.*, 554 F.3d 114, 116 (3d Cir. 2009) (citing *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989)); *see also Shine v. Merenda*, 586 F. App'x 95, 98 (3d Cir. 2014); *Ford v. SEPTA*, 374 F. App'x 326, 326 (3d Cir. 2010).  Instead, the exclusive means

of enforcing rights under Section 1981 is through Section 1983.  *Brown v. SEPTA*, 539 F. App'x

25, 29 (3d Cir. 2013); *McGovern*, 554 F.3d at 121.

The allegations supporting Plaintiffs' claims under Section 1981 in Count III are nearly

identical to the allegations supporting Plaintiffs' claims under Section 1983 in Count II, with the

exception of excerpts from the different statutes relied upon in each Count.  Permitting Plaintiffs

to pursue the Section 1981 claims through Section 1983 would render Count III and Count II

duplicative.  Accordingly, Count III will be dismissed.

### D. Title XIX of the Social Security Act – 42 U.S.C. § 1396a(a)(8) (Count IV)

In Count IV, Plaintiffs assert a claim under Section 1396a(a)(8) of the Medicaid Act and

an associated regulation, 42 C.F.R. § 435.930(b).[9]  Section 1396a(a)(8) of the Medicaid Act

provides that "[a]state plan for medical assistance must . . . provide that all individuals wishing

to make application for medical assistance under the plan shall have the opportunity to do so, and

that such assistance shall be furnished with reasonable promptness to all eligible individuals."

42 U.S.C. § 1396a(a)(8).  Section 435.930(b) of the Medicaid Regulations provides that the state

agency must "continue to furnish Medicaid regularly to all eligible individuals until they are

found to be ineligible."  42 C.F.R. § 435.930(b).

The Medicaid Act generally does not provide a private cause of action.  *Sabree*, 367 F.3d

at 182 ("'[I]n legislation enacted pursuant to the spending power, the typical remedy for state

---

[9] "Title XIX of the Social Security Act, codified at 42 U.S.C. §§ 1396-1396v and popularly known as the 'Medicaid Act,' established a 'cooperative federal-state program under which the federal government furnishes funding to states for the purpose  of providing medical assistance to eligible low-income persons.'"  *Sabree v. Richman*, 367 F.3d 180, 182 (3d Cir. 2004) (quoting *Pa. Pharm. Ass'n v. Houstoun*, 283 F.3d 531, 533 (3d Cir. 2002)).  Although it is not required that all states participate in the program, those that do accept federal funding, such as Pennsylvania, "must comply with the Medicaid Act and with the regulations promulgated by the Secretary of Health and Human Services ('HHS').  Participating states must devise and implement a state assistance plan that is approved by the Secretary of HHS."  *Id.*

noncompliance with federally imposed conditions is not a private cause of action for

noncompliance but rather action by the Federal Government to terminate funds to the State.'"

(quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981)).  However, there

are circumstances under which the Medicaid Act confers rights that may be addressed by

individual lawsuits through Section 1983.  *See id*. at 193 (considering whether three sections of

the Medicaid Act conferred an enforceable private right of action under Section 1983).  "Section

1983 provides a remedy for deprivation of rights secured by federal statute, not for violations of

federal law."  *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515,

521 (E.D. Pa. 2011) (citing *Sabree*, 367 F.3d at 181).  Therefore, we must determine whether

Section 1396a(a)(8) of the Medicaid Act and Section 435.930(b) of the Medicaid Regulations

"confer on [Plaintiffs] individual federal rights enforceable under Section 1983."  *Id*.  Our focus

is not on whether Plaintiffs adequately allege that Defendants violated the Medicaid statute and

regulation.  *Id*.

　　　　The Third Circuit has specifically determined that Section 1396a(a)(8) of the Medicaid

Act confers individual rights, enforceable through Section 1983.  *Sabree*, 367 F.3d at 192 ("[I]t

is evident, at least to us, that the statutory language [of 42 U.S.C. § 1396a(a)(8)], despite

countervailing structural elements of the statute, unambiguously confers rights which plaintiffs

can enforce.").[10]  Therefore, claims asserted under Section 1396a(a)(8) of the Medicaid Act may

be maintained through Section 1983.

---

[10] Courts employ a three-part test to determine whether a statute confers individual rights.
In *Sabree*, the Third Circuit explained that "a statute must (1) be intended by Congress to benefit
the plaintiff, (2) not be 'vague and amorphous,' and (3) impose an unambiguous 'binding
obligation on the States.'"  *Sabree*, 367 F.3d at 186 (quoting *Blessing v. Freestone*, 520 U.S. 329,
340-41 (1997)).  The Third Circuit in *Sabree* used the *Blessing* test in concluding that Section
1396a(a)(8) of the Medicaid Act confers enforceable rights.

Next, we must determine whether Defendants' alleged violation of Section 435.930(b) of the Medicaid Regulations is enforceable under Section 1983.  In *Three Rivers Center for Independent Living, Incorporated v. Housing Authority*, the Third Circuit addressed the question of "whether a private right of action exists to enforce regulations that an agency promulgates pursuant to a federal statute."  382 F.3d 412, 422 (3d Cir. 2004).  The Court in *Three Rivers* was asked to consider whether a Housing and Urban Development ("HUD") Regulation effecting Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), conferred a right a private right of action enforceable under Section 1983.  *Id*. at 416.

In reviewing prior precedent, the Third Circuit determined that "[a] [private] plaintiff can only enforce a regulation under Section 1983 if the regulation 'merely defines the specific right that Congress already has conferred through the statute.'"  *Id*. at 424 (quoting *South Camden Citizens in Action v. New Jersey Dep't of Envtl. Prot.*, 274 F.3d 771, 783 (3d Cir. 2001)).  "In other words, private parties cannot enforce regulations under Section 1983 when the regulations 'do more than define or flesh out the content of a specific right conferred upon the plaintiffs' by the statute and instead 'give the statute a scope beyond that Congress contemplated.'"  *Id*. (quoting *South Camden*, 274 F.3d at 790).  Based on this guidance, we must determine whether the Section 435.930(b) of the Medicaid Regulations merely "construe[s] a personal right" created by Section 1396a(a)(8) of the Medicaid Act or whether it does something more.  *Id*.

Section 1396a(a)(8) of the Medicaid Act provides that a state plan for medical assistance must "provide that all individuals wishing to make application for medical assistance under the plan shall have the opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."  42 U.S.C. § 1396a(a)(8).  Section 435.930(b)

of the Medicaid Regulations states that the state agency must "continue to furnish Medicaid regularly to all eligible individuals until they are found to be ineligible."  42 C.F.R. § 435.930(b).

Based upon the unambiguous language of the statute and associated regulation, it is apparent that the regulation merely defines or fleshes out the right conferred by the statute.  In other words, while the statute requires eligible applicants applying for medical assistance to be provided that assistance with "reasonable promptness," the regulation does nothing more than to say that that assistance must continue until such time as ineligibility is determined.  These requirements are the inverse of each other.  The language in the Section 435.930(b) merely construes the rights conferred by Section 1396a(a)(8).  As a result, we are satisfied claims to enforce alleged violations of Section 435.930(b) of the Medicare Regulations may be maintained through Section 1983.

As we noted above with respect to Plaintiff's Section 1983 Claims, Section 1983 is not an appropriate vehicle for claims asserted against state officials sued in their official capacity.  Therefore, Plaintiffs' claims alleging violations of 42 U.S.C. § 1396a(a)(8), and 42 C.F.R. § 435.930(b), which may be pursued through Section 1983, may only be brought against Defendants in their individual capacities.  All claims asserted in Count IV against Defendants in their official capacities will be dismissed.  In addition, our conclusions as to Plaintiffs' allegations concerning Defendants' personal involvement in constitutional violations apply with equal force to Count IV.  As noted above, we determined that Plaintiffs failed to allege facts sufficient to demonstrate the personal involvement of Defendants Alexander, Mackereth, and Robson in relation to the constitutional violations.  Accordingly, all claims asserted in Count IV as to these Defendants will be dismissed, without prejudice.

### E.       Leave to Amend Complaint

Finally, Plaintiffs request permission to amend their Complaint.  Leave to amend should be freely granted "in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment."  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted."  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).  There is no evidence of bad faith, dilatory motive, or an attempt to cause undue delay on the part of Plaintiffs.  In addition, Defendants will not be prejudiced by the Court allowing Plaintiffs leave to amend certain claims asserted against them.  As a result, we will permit Plaintiffs the opportunity to amend the Complaint to assert additional allegations about (1) similarly situated individuals, as it relates to the equal protection claims (Count II); and (2) the personal involvement of Defendants Alexander, Mackereth, and Robson as it relates to the procedural due process claims (Count II), and the claims asserted under the Medicaid Act and Medicaid Regulations (Count IV).

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted in part, and denied in part.

An appropriate Order follows.

BY THE COURT:

_____

**R. BARCLAY SURRICK, J.**

24