IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN ODI | : |
| | : CIVIL ACTION |
| v. | : |
| | : NO. 15-4903 |
| GARY ALEXANDER, ET AL. | : |

**MEMORANDUM**

**SURRICK, J.**                                                                                          **FEBRUARY 27, 2018**

      Presently before the Court is Defendants Gary Alexander, Beverly Mackereth, Jane Richards, and Linda Robson's Motion to Dismiss Plaintiff's Second Amended Complaint for Failure to State a Claim (ECF No. 25). For the following reasons, Defendants' Motion will be denied.

**I.    BACKGROUND**

      In this civil rights action, Plaintiff John Odi, individually, and as representative of the estate of his deceased mother, Lily Odi, alleges that Ms. Odi was unlawfully denied Medicaid benefits due to discrimination based upon race and national origin, which ultimately resulted in Ms. Odi's death from an aggressive form of breast cancer. Plaintiff asserts claims for substantive and procedural due process and for equal protection under 42 U.S.C. §§ 1981, 1983, and 1988; 42 U.S.C. § 2000d (Title VI of the Civil Rights Act), and 42 U.S.C. § 1396a(a)(8) (Title XIX of the Social Security Act); and the associated Medicaid Regulation, 42 C.F.R. § 435.930(b). Defendants include Gary Alexander and Beverly Mackereth, both former Secretaries of the Department of Public Welfare of the Commonwealth of Pennsylvania; Linda Robson, Executive Director of the Delaware County Assistance Office; and Jane Richards, the

District Administrator for the Darby District of the Delaware County Assistance Office.[1] All Defendants are sued in their official and individual capacities.

### A. Factual Background[2]

The facts of this case as set forth in the Second Amended Complaint (SAC, ECF No. 24), are as follows. In May 2008, Ms. Odi lawfully emigrated from Nigeria to the United States to live in Pennsylvania with her son, John Odi. On April 9, 2010, Ms. Odi obtained the status of lawful permanent resident and was given a "green card." In May 2011, Ms. Odi was diagnosed with breast cancer and subsequently applied for emergency Medicaid through the Delaware County Assistance Office.

Medicaid is a public medical insurance program jointly funded by the federal government and the states. In Pennsylvania, DHS is the state agency that administers Medicaid. An individual in Pennsylvania who wishes to receive Medicaid applies through the appropriate DHS County Assistance Office, which screens the application and determines whether the applicant is eligible for Medicaid. DHS and its employees, including all Defendants, were responsible for determining whether an individual like Ms. Odi is eligible for medical assistance.

In May 2011, Ms. Odi's application for Medicaid was approved and she received benefits from May 2011 until May 2012. On May 14, 2012, DHS closed Ms. Odi's case and stopped providing her with benefits. When DHS terminated Ms. Odi's benefits, it failed to provide her with renewal forms or with a redetermination notice. In June 2012, Ms. Odi filed a new application for Medicaid benefits as she continued to require medical treatment for her breast

---

[1] The Pennsylvania Department of Public Welfare has since been renamed the Pennsylvania Department of Human Services ("DHS"). We will refer to the state agency as "DHS" throughout this Memorandum.

[2] For the purpose of this Motion, the factual allegations in the Second Amended Complaint are taken as true. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

cancer. In conjunction with this application, a letter was supplied to DHS from Plaintiff's doctor, Dr. Jenia Jeneb-Wolcott, which verified that Ms. Odi suffered from breast cancer. The letter stressed the importance of Ms. Odi continuing to receive ongoing treatment for at least five years.

On July 5, 2012, DHS denied Ms. Odi's June 2012 Medicaid application. DHS stated in the denial that there was "no proof of income or letter forms" supplied with her application. In fact, Ms. Odi provided these forms with her application. On July 27, 2012, DHS notified Ms. Odi that more information regarding family income would be needed to make a determination about her June 2012 application for Medicaid benefits. On August 1, 2012, John Odi supplied DHS with the requested financial letter.

On August 21, 2012, DHS again denied Ms. Odi's application for emergency Medicaid assistance. In its denial letter, DHS stated that Ms. Odi was not a "United States citizen or an alien lawfully admitted for permanent residence" and therefore did not qualify for benefits. DHS's denial letter also cited as a basis for the denial 55 Pa. Code § 149.23, which pertains to the Aid to Families with Dependent Children program ("AFDC"). Code section 149.23 states that "[a] person who is not a citizen of the United States is not eligible for AFDC unless he is an alien lawfully admitted for permanent residence or otherwise permanently residing in the United States under provisions of law." 55 Pa. Code § 149.23. Ms. Odi was a lawful permanent resident at the time of the denial letter, and had been since 2010. She was therefore not subject to the ineligibility requirements contained in 55 Pa. Code § 149.23.

Defendant Richards and her subordinates failed to review the file or any of the documentation supplied by Ms. Odi. In response to DHS's denial letter, the Delaware County Assistance Office was again supplied with a copy of Ms. Odi's green card, her social security

card, and a letter from her doctor stressing the need for continued care. The doctor's letter had previously been provided to DHS in conjunction with the June 2012 application for benefits. All of this information was ignored. Richards allegedly decided that Ms. Odi's breast cancer did not constitute an emergency.

On September 20, 2012, Ms. Odi appealed the denial of her Medicaid benefits. Despite numerous requests to discuss the appeal informally, the Odis were not given the opportunity. Specifically, in October 2012, Mr. Odi repeatedly requested an opportunity to discuss the appeal, both by telephone and in writing, but Mr. Odi was not afforded a telephone call. Finally, in March 2013, Mr. Odi's demands were granted and DHS agreed to provide Ms. Odi a hearing by telephone. The telephonic hearing on the denial of Ms. Odi's benefits took place on April 23, 2013. During the hearing, the Administrative Law Judge and representatives from DHS agreed that Ms. Odi should have had medical assistance. Ms. Odi's benefits were reinstated retroactively to August 1, 2012. Notwithstanding the reinstatement, Ms. Odi was never given a functioning "access card" or credential that functioned to pay for the medical services. Ms. Odi several times attempted to use the Access Card that DHS provided to her; however, the card did not work and was rejected by each and every medical provider to which it was presented.

On August 3, 2013, Ms. Odi was notified again that her benefits were terminated. She timely appealed the termination. Ms. Odi died from untreated breast cancer on December 13, 2013. Ms. Odi's appeal was nevertheless pursued, ending with a settlement between her representatives and DHS on May 27, 2015. The settlement provided that the benefits were reinstated posthumously for the period covering August 18, 2013 to December 13, 2013.

**B.     Procedural History**

On August 31, 2015, Mr. Odi, on behalf of himself and the estate of his deceased mother, Ms. Odi, filed a Complaint in this Court against Defendants Alexander, Mackareth, Robson, and Richards.  (ECF No. 1.)  An Amended Complaint was filed on December 28, 2015.  (ECF No. 4.)  The Amended Complaint contains four counts:  Count I asserts a claim under Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d; Count II asserts claims under 42 U.S.C. §§ 1983 and 1988; Count III asserts a claim under 42 U.S.C. § 1981; and Count IV asserts a claim under the Medicaid Statute and Regulations, specifically 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. § 435.930(b).  All four counts were asserted against all Defendants, both in their individual and their official capacities.

On January 11, 2016, Defendants Alexander and Mackereth filed a Motion to Dismiss the Amended Complaint for Failure to State a Claim.  (ECF No. 5.)  Plaintiff filed a Response to Defendants' Motion to Dismiss on February 1, 2016.  (ECF No. 7.)  On May 24, 2016, Defendants Richards and Robson filed a Motion to Dismiss for Failure to State a Claim.  (ECF No. 12.)  On November 7, 2016, Richards individually filed a Motion to Dismiss for Failure to State a Claim.  (ECF No. 17.)  On November 18, 2016, Plaintiff filed a Response to Richards' Motion to Dismiss.  (ECF No. 18.)  On November 28, 2016, Richards filed a Reply to Plaintiff's Response to her Motion to Dismiss.  (ECF No. 19.)  On March 7, 2017, we issued a detailed Memorandum and Order granting in part and denying in part Defendants' Motions to Dismiss. (ECF Nos. 20, 21.)  On March 16, 2017, Plaintiff filed a Motion for Extension of Time to file a Second Amended Complaint.  (ECF No. 22.)  The next day, we granted Plaintiff's Motion for Extension of Time.  (ECF No. 23.)  On May 1, 2017, Plaintiff filed his Second Amended Complaint.  (ECF No. 24.)  Defendants filed the instant Motion to Dismiss on May 15, 2017.

(ECF No. 25.) On May 30, 2017, Plaintiff filed his Response in Opposition to Defendants' Motion to Dismiss. (ECF No. 26.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. A motion under Rule 12(b)(6), therefore, tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is plausible "when the Plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that merely alleges entitlement to relief, without alleging facts that show entitlement, must be dismissed. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Courts need not accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

In determining whether dismissal of the complaint is appropriate, courts use a two-part

analysis. *Fowler*, 578 F.3d at 210. First, courts separate the factual and legal elements of the claim and accept all of the complaint's well-pleaded facts as true. *Id.* at 210-11. Next, courts determine whether the facts alleged in the complaint are sufficient to show that the Plaintiffs have a "'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Given the nature of the two-part analysis, "'[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

Plaintiff asserts civil rights violations under 42 U.S.C. §§ 1983 and 1988 (SAC Count I), and violations of the Medicaid Statute and related regulations under 42 U.S.C. § 1396(a)(8) and 42 C.F.R. § 435.930(b) (SAC Count II). Defendants seek dismissal of both counts. Plaintiff requests that we deny Defendants' Motion to Dismiss, or in the alternative, grant Plaintiff leave to amend the SAC.

### A. Section 1983 and 1988 Claims (Count I)

Defendants argue that the SAC fails to set forth allegations with sufficient specificity to survive a motion to dismiss.[3] Accepting as true all of the SAC's well-pleaded facts, we conclude that Plaintiff's pleadings are sufficient at this juncture to show that he has a plausible claim for relief. *Fowler*, 578 F.3d at 210-11.

#### 1. *Equal Protection Claim*

In our March 7 Memorandum and Order, we granted without prejudice Defendants' Motion to Dismiss Plaintiff's Equal Protection Claim. (Mar. 7 Mem. 14-15.) Thereafter,

---

[3] Plaintiff responds in part by pointing out that numerous requests were made to DHS for Ms. Odi's complete case file but Defendants failed to provide the file.

Plaintiff revised the Equal Protection Count of the SAC to bolster the allegations supporting the argument that Defendants' false or pretextual justifications for denying Ms. Odi's benefits entitlements were intentionally discriminatory based on Ms. Odi's race, and constituted unlawful discrimination in violation of Section 1983. (*See, e.g.*, SAC ¶¶ 115-23, 127-29).

The Equal Protection Clause of the United States Constitution provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The clause serves to ensure that all similarly situated individuals are treated the same. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim under Section 1983, a plaintiff must allege that: (1) she is a member of a protected class; and (2) that she received treatment different than that received by other similarly situated individuals. *Keenan v. City of Phila.*, 983 F.2d 459, 465 (3d Cir. 1992); *see also Shuman ex rel. Shertzer v. Penn Manor Sch. Dist.*, 422 F.3d 141, 151 (3d Cir. 2005) (detailing that a plaintiff must plead facts showing that other similarly situated individuals received different treatment).

Defendants argue that the SAC simply puts forth vague, conclusory, unsupported contentions that do not afford an inference of purposeful discrimination. (Defs.' Mot. 12.) They also claim that the SAC is devoid of any allegation identifying similarly situated individuals who were treated differently from Ms. Odi based on race. (*Id.*) Plaintiff argues that he adequately pled that Ms. Odi was treated differently from similarly situated individuals based on her race and national origin. We agree that Plaintiff's pleadings are sufficient.

Specifically, Ms. Odi was treated differently in three different circumstances:
(1) Defendants' misclassification of Ms. Odi's breast cancer as a non-emergency;
(2) Defendants' misclassification of Ms. Odi's immigration status; and (3) Defendants' failure to

8

timely or adequately review Ms. Odi's file throughout each phase of her illness. (*See, e.g.*, Pl.'s Resp. 13)

Initially, Defendants erroneously and irrationally classified Ms. Odi's breast cancer as a non-emergency. Plaintiff explicitly avers that Richards elected to not classify Ms. Odi's breast cancer as an "emergency" (SAC ¶ 41), and that Richards' classification of Ms. Odi's breast cancer as a non-emergency was directed by Defendant Robson or by Defendants Mackereth and/or Alexander as part of DHS' deliberate policy to deny Ms. Odi medical benefits. (*Id.* ¶¶ 42-43.)

Next, with regard to Ms. Odi's immigration status, Plaintiff avers that Defendant Mackereth, or in the alternative, Defendant Alexander, directed the officials and workers of the Delaware County Assistance Office —including Richards and Robson—to misclassify her immigration status. (*Id.* ¶¶ 44, 45.) Moreover, Plaintiff claims that no DHS representatives submitted relevant documentation to the USCIS SAVE program to ensure that the applicable benefits were conferred on Ms. Odi. (*Id.* ¶¶ 59-64.) In addition, the SAC states that the policy of using the pretextual proffered rationale of 55 Pa. Code §149.23 was instituted, promulgated and communicated by Defendant Mackereth and/or Alexander personally and communicated to the officials of the Delaware County Assistance Office (including Defendants Robson and Richards) for the purpose of denying Ms. Odi medical benefits on account of her national origin or perceived alienage. (*Id.* ¶¶ 115, 116.)

Finally, Plaintiff alleges that Defendants either directed others to not review—or they personally failed to review—Ms. Odi's file. (*Id.* ¶¶ 47-50.) In addition, Plaintiff alleges that the parties were fully aware that a critical level of care was needed. (*Id.* ¶¶ 51-52.) Mr. Odi was forced to wait almost six months—between October 6, 2012 and March 2013—before receiving

timely or adequately review Ms. Odi's file throughout each phase of her illness. (*See, e.g.*, Pl.'s Resp. 13)

Initially, Defendants erroneously and irrationally classified Ms. Odi's breast cancer as a non-emergency. Plaintiff explicitly avers that Richards elected to not classify Ms. Odi's breast cancer as an "emergency" (SAC ¶ 41), and that Richards' classification of Ms. Odi's breast cancer as a non-emergency was directed by Defendant Robson or by Defendants Mackereth and/or Alexander as part of DHS' deliberate policy to deny Ms. Odi medical benefits. (*Id.* ¶¶ 42-43.)

Next, with regard to Ms. Odi's immigration status, Plaintiff avers that Defendant Mackereth, or in the alternative, Defendant Alexander, directed the officials and workers of the Delaware County Assistance Office —including Richards and Robson—to misclassify her immigration status. (*Id.* ¶¶ 44, 45.) Moreover, Plaintiff claims that no DHS representatives submitted relevant documentation to the USCIS SAVE program to ensure that the applicable benefits were conferred on Ms. Odi. (*Id.* ¶¶ 59-64.) In addition, the SAC states that the policy of using the pretextual proffered rationale of 55 Pa. Code §149.23 was instituted, promulgated and communicated by Defendant Mackereth and/or Alexander personally and communicated to the officials of the Delaware County Assistance Office (including Defendants Robson and Richards) for the purpose of denying Ms. Odi medical benefits on account of her national origin or perceived alienage. (*Id.* ¶¶ 115, 116.)

Finally, Plaintiff alleges that Defendants either directed others to not review—or they personally failed to review—Ms. Odi's file. (*Id.* ¶¶ 47-50.) In addition, Plaintiff alleges that the parties were fully aware that a critical level of care was needed. (*Id.* ¶¶ 51-52.) Mr. Odi was forced to wait almost six months—between October 6, 2012 and March 2013—before receiving

correspondence with regard to his request for an appeal. (*Id.* ¶¶ 53-54.) According to Plaintiff, the decision denying appeal was made by either Robson or Richards. (*Id.* ¶¶ 55-56.)

In addition, Plaintiff makes allegations, albeit more general, concerning similarly situated individuals. (SAC ¶ 129 (stating that "individuals situated as Ms. Odi . . . but for the individuals' race and/or perceived country of origin, received different, favorable processing of their applications.").) "At the motion to dismiss stage, [the plaintiff] must allege facts sufficient to make plausible the existence of such similarly situated parties." *Perano v. Township of Tilden*, 423 F. App'x 234, 238 (3d Cir. 2011) (citation omitted). We are satisfied that, at this juncture, the facts taken as a whole, raise a plausible claim that Plaintiff was treated differently on account of her race, origin, and ethnicity. The pleadings adequately state a § 1983 equal protection claim.

### 2. *Section 1983 Procedural Due Process Claim*

Plaintiff reasserts a Section 1983 procedural due process claim. The Fourteenth Amendment prevents the government from depriving an individual of liberty or property interests without due process of law. U.S. CONST. amend. XIV, § 1. To assert a procedural due process violation, a plaintiff must demonstrate that: (1) he or she was deprived of a liberty or property interest; and (2) the procedures afforded the plaintiff incident to that deprivation failed to comport with the requirements of due process. *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006). A protected property interest exists only if the plaintiff has a legitimate claim of entitlement to the interest. *Id.* at 234. "Due process requires that a deprivation of a property interest 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Gikas v. Washington Sch. Dist.*, 328 F.3d 731, 738 (3d Cir. 2003) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985)); *see also Graham v. City of Phila.*, 402

F.3d 139, 145 (3d Cir. 2005) ("The Supreme Court consistently has held that some kind of hearing is required at some time before a person is finally deprived of his property interests." (citation and internal quotation marks omitted)).

It is undisputed that Ms. Odi was deprived benefits under Medicaid. It is well-established that litigants maintain a property interest in their Medicaid benefits. *See Cospito v. Heckler*, 742 F.2d 72, 81 (3d Cir. 1984); *see also Lewis v. Rendell*, 501 F. Supp. 2d 671, 692 (E.D. Pa. 2007) ("Medicaid beneficiaries do, in fact, have a constitutionally protected property interest in Medicaid benefits.") (citation and internal quotation marks omitted), *rev'd in part on other grounds, Lewis v. Alexander*, 685 F.3d 325 (3d Cir. 2012). Accordingly, Ms. Odi was clearly deprived of a property interest.

As addressed in the March 7 Memorandum and Order, it is evident that Defendants did not follow the necessary administrative procedures to satisfy the procedural due process requirements outlined in *Hill*, *supra*. In the March 7 decision, we granted—without prejudice—Defendants' motion to dismiss the procedural due process claims on the grounds that Plaintiff failed to address the personal involvement of Defendants Alexander, Mackereth, and Robson. (March 7 Mem. 17.) Plaintiff has cured this defect in the SAC. Specifically, Plaintiff alleges that Richards and Robson failed to review any documentation supplied by Ms. Odi (SAC ¶¶ 47, 48), and that Mackereth and Alexander communicated to and approved of the decision by Richards and Robson to deny review to Ms. Odi on account of her national origin or perceived alienage (*id*. at ¶¶ 49, 50). It is also alleged that Richards and Robson specifically denied Ms. Odi a timely appeal hearing, (*id*. ¶ 55, 56), failed to submit documents to the SAVE program (*id*. ¶¶ 63-64), and failed to forward appeals to the Bureau of Hearing and Appeals (*id*. ¶¶ 72-73.)

Finally, Plaintiff has pleaded that Ms. Odi was denied these due process guarantees as a matter of official policy on the part of Defendant Mackereth and Alexander. (*Id*. ¶¶ 49-50, 84.)

Based on the facts alleged in the SAC, it is evident that the Delaware County Assistance Office failed to timely forward Odi's appeal to the appropriate regulatory authority; that Defendants Richard and Robson provided to Ms. Odi a completely ineffective Medicaid access card; that Defendants neglected Agency policy in crafting the decision to erroneously classify Ms. Odi as a disqualified alien; and that Defendants ineptly failed to comply with the requirements of due process to ensure Ms. Odi was afforded a timely appeal. Accepting Plaintiff's allegations as true, Plaintiff raises plausible claims that Defendants' actions were motivated by discriminatory animus towards Ms. Odi's race and immigration status.

### 3. Qualified Immunity

Finally, Defendants argue that they are entitled to qualified immunity. (Defs.' Mot. 14.) They aver that the SAC fails to set forth sufficient allegations to allege constitutional equal protection and due process violations, let alone violations of which a reasonable person would have been aware.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). It serves the dual purpose of holding government officials accountable when their power is exercised unreasonably and protecting those officials from "harassment, distraction, and liability when they perform their duties reasonably." *Id*; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (noting that qualified immunity is designed to

12

safeguard "all but the plainly incompetent or those who knowingly violate the law" (citation omitted)).

An analysis of whether qualified immunity protects Defendant''s conduct proceeds in two steps. A district court determines "(1) whether the plaintiff alleged sufficient facts to establish the violation of a constitutional right, and (2) whether the right was 'clearly established' at the time of the defendant's actions." *Estate of Lagano v. Bergen Cnty. Prosecutor's Office*, 769 F.3d 850, 858 (3d Cir. 2014) (citing *Pearson*, 555 U.S. at 231). This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, "there does not have to be 'precise factual correspondence' between the case at issue and a previous case in order for a right to be 'clearly established [.]'" *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004). Rather, "[t]o be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) (citation and internal quotation marks omitted). Although the analysis does not "require a case directly on point," there must be "existing precedent [that] placed the statutory or constitutional question beyond debate." *Id*. (citation and internal quotation marks omitted).

Plaintiff argues that Defendants are not entitled to qualified immunity because Plaintiff's "paucity of facts" fails to establish that defendants' conduct violated a clearly established right of which a reasonable person would have understood. (Defs.' Mot. 15.) In particular, they argue that in light of Medicaid's "five-year ban" under 8 U.S.C. § 1613(b), it is not clearly established that the denial of Ms. Odi's benefits clearly violated federal law. The five-year bar, as detailed by the Personal Responsibility and Work Opportunity Reconciliation Act, states as follows:

> an alien who is a qualified alien . . . and who enters the United States on or after August 22, 1996, is not eligible for any Federal means-tested public benefit

13

for a period of 5 years beginning on the date of the alien's entry into the United
States with a status within the meaning of the term "qualified alien."

8 U.S.C. § 1613(a). According to Defendants, the five-year bar was directly applicable to Ms. Odi, since she had resided in the United States for fewer than five years at the time that she submitted her benefits request. (Defs.' Mot. n.6, 15-16.) Defendants' argument is unpersuasive.

Ms. Odi's breast cancer diagnosis constituted an emergency medical condition, thereby exempting her from the statutory bar.[4] Plaintiff has pled that Ms. Odi is a "qualified alien" for the purposes of Medicaid eligibility. At this juncture we must accept this as true. As Plaintiff notes, even if Ms. Odi did not meet the requirements as a qualified alien, since her diagnosis was unquestionably an emergency condition, she was nevertheless entitled to Medicaid benefits. *See* 55 Pa. Code § 150.11(a) (instructing that "an alien who has an emergency medical condition as defined in § 150.2 . . . and who meets the income, resource and other categorical requirements of the applicable Medicaid program may be eligible for Medicaid for the treatment of the emergency medical condition").

Defendants' argument is also disingenuous in light of the fact that they originally granted Ms. Odi benefits, and then subsequently failed to renew them. Had the five-year ban really applied to Ms. Odi, then she would not have been granted emergency medical benefits in the first

---

[4] "Emergency medical condition" is defined by 55 Pa. Code § 150.2 as:

[a] medical condition . . . manifesting itself by acute symptoms of sufficient severity including severe pain so that the absence of immediate medical attention could reasonably be expected to result in one of the following:

(i) Placing the patient's health in serious jeopardy.

(ii) Serious impairment to bodily functions.

(iii) Serious dysfunction of a bodily organ or part.

55 Pa. Code § 150.2; *see also* § 1903(v)(3) of the Social Security Act (42 U.S.C. § 1396b(v)(3)) (same).

instance. Ms. Odi's rights to not be denied (1) emergency medical assistance for breast cancer and (2) fair procedures to determine her eligibility for that assistance on account of her race, national origin, and alienage, were clearly established at the time the decisions were made regarding her medical benefits. Qualified immunity does not shield Defendants from liability.[5]

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied, and Plaintiff's request for leave to amend the complaint is denied.

**BY THE COURT:**

_____
**R. BARCLAY SURRICK, J.**

---

[5] Because we deny Defendants' Motion to Dismiss, we need not address Plaintiff's alternative request to amend the Second Amended Complaint.